JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Axalta Coating Systems, LLC

## DEFENDANTS
LINDA Y. GRAY INC. d/b/a SKY COLLISION

**(b)** County of Residence of First Listed Plaintiff   Delaware, Pennsylvania
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Walton County, Georgia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas R. Waskom, Esq
Hunton & Williams LLP
951 E. Byrd Street, Richmond, VA 23219

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332

Brief description of cause:
Breach of Contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $  $236,119.48+costs/fees/int

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.**

Address of Plaintiff: Axalta Coating Systems, LLC, 50 Applied Bank Blvd #300, Glen Mills, PA 19342

Address of Defendant: LINDA Y. GRAY INC. d/b/a SKY COLLISION,

Place of Accident, Incident or Transaction: Pennsylvania

*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☒     No☐

Does this case involve multidistrict litigation possibilities?          Yes☐     No☒

*RELATED CASE, IF ANY:*

Case Number: _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐     No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐     No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐     No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?          Yes☐     No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
     (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
     (Please specify) _____

### ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Thomas R. Waskom, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: December 6, 2017          Attorney-at-Law          321664
                                                          Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: December 6, 2017          Attorney-at-Law          321664
                                                          Attorney I.D.#

CIV. 609 (5/2012)



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

AXALTA COATING SYSTEMS, LLC                     CIVIL ACTION

            v.

LINDA Y. GRAY, INC. d/b/a                        NO. **17   5557**
SKY COLLISION

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                       ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                             ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)


| 12/06/2017 | Thomas R. Waskom | Axalta Coating Systems, LLC |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (804) 788-8403 | (804) 343-4868 | twaskom@hunton.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 11 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | | |
|---|---|---|
| AXALTA COATING SYSTEMS, LLC, | : | |
| a Delaware limited liability company, | : | CIVIL ACTION NO.: |
| | : | |
| | : | |
| Plaintiff, | : | **COMPLAINT** |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| LINDA Y. GRAY INC. d/b/a | : | |
| SKY COLLISION | : | |
| a Georgia corporation, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**COMPLAINT**

Plaintiff Axalta Coating Systems, LLC ("Axalta"), by and through counsel, files the following Complaint against Linda Y. Gray Inc., d/b/a Sky Collision ("Sky"):

**INTRODUCTION**

1.     Axalta files this Complaint to recover damages it incurred due to Sky's breach of contract.

2.     Axalta manufactures, markets and distributes automotive paint and related products ("Products").

3.     Axalta and Sky entered into that certain Master Incentive Agreement and Incentive Agreement (collectively the "Agreement") on August 2, 2016.

4.     Under the Agreement, Axalta provided Sky with a $250,000 shop allowance (the "Shop Allowance").   Additionally, Axalta provided equipment for use at Sky's location (the "Loaned Equipment").

5.     In exchange, Sky agreed to purchase and use Axalta Products exclusively, until it purchased $1,360,000.00 in Products at actual purchase price less any discount, rebates, or credits, if any were applied ("Purchase Commitment").

6.     Sky took the Shop Allowance and the Loaned Equipment but breached the Agreement by switching to a competitor's automotive paint and related product line before fulfilling the Purchase Commitment.

## PARTIES, JURISDICTION AND VENUE

7.     Plaintiff Axalta is a limited liability company organized under the laws of Delaware with its principal place of business at 50 Applied Bank Blvd., Suite 300, Glen Mills, Pennsylvania 19342.

8.     Axalta has a single member: Axalta Coating Systems U.S. Holdings, Inc. ("Axalta Holdings").  Axalta Holdings is incorporated in Delaware, with its principal place of business in Pennsylvania.  Thus, for purposes of diversity jurisdiction, Axalta is a citizen of Delaware and Pennsylvania.

9.     Linda Y. Gray, Inc. d/b/a Sky Collision is Georgia corporation with its principal place of business located at 1547 South Broad Street, Monroe, Georgia 30655-2351.  Thus, for purposes of diversity jurisdiction, Sky is a citizen of Georgia.

10.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interests, there is complete diversity of citizenship between the parties, and jurisdiction and venue are proper in this Court.

2

11.     This Court has personal jurisdiction over Sky, as Sky consented to personal jurisdiction in this forum, under the terms of the 2016 Agreement between it and Axalta.  The Court also has personal jurisdiction over Sky because its actions caused harm to Axalta in Pennsylvania.

12.     Venue is proper in the Eastern District of Pennsylvania because the parties agreed to bring all claims arising under the Agreement in this Court.

## FACTS

13.     On July 1, 2016, Linda Gray, owner of Sky, executed the Agreement on behalf of Sky.  The Agreement is attached as **Exhibit 1**.

14.     Gray had actual authority to execute the Agreement on behalf of her company.

15.     Under the terms of the Agreement, Axalta agreed to provide the Shop Allowance of $250,000.00, as well as Loaned Equipment with an agreed value of $34,850.04.  *See* Ex. 1 at 9.

16.     In exchange, Sky agreed to purchase and use Axalta Products exclusively, until it purchased $1,360,000.00 of such Products at actual purchase price less any discount, rebates, or credits, if any were applied.  *Id*. at 10.

17.     Under the terms of the Agreement, Axalta is entitled to termination charges if Sky breaches the Agreement:

> Should Axalta terminate this Incentive Agreement pursuant to Section 5(a) of the Master Agreement or Customer fails to satisfy the Purchase Commitment upon the expiration of the Term, Customer shall immediately pay Axalta, to partially compensate Axalta for its losses, the following early termination charges ("Termination Charges"):
>
> > **Step 1:** Divide the sum of Customer's actual product purchases at the time of the breach by its Purchase Commitment as of the Effective Date, which is $1,360,000.00, to determine the percentage purchased against its Purchase Commitment ("Percentage Purchased"); then
> >
> > **Step 2:** Subtract the Percentage Purchased from 100% to determine the percentage of Termination Charges ("Termination Charges Percent"); then

3

**Step 3:** Multiply the $250,000.00 ("Shop Allowance") by the Termination Charges Percent to arrive at the final Termination Charges amount payable to Axalta; and

- USD 34,850.04 representing the agreed upon value of the Loaned Equipment, or, at Axalta's option, return the Loaned Equipment to Axalta in good working order.

*Id*. at 10.

18.   In addition to the Termination Charges, the Agreement entitles Axalta to attorney's fees, court costs, interest and other costs related to a suit for breach of the Agreement, including lost profits. *Id*.

19.   Axalta fulfilled its obligations and provided Sky with both the Shop Allowance and the Loaned Equipment.

20.   Sky, however, failed to fulfill its contractual obligations.

21.   Without meeting its Purchase Commitment, Sky began purchasing paint and related products from PPG, an Axalta competitor.

22.   Sky materially breached the Agreement by (1) switching to a PPG's automotive paint and related product line and (2) failing to fulfill the Purchase Commitment.

23.   Axalta has suffered damages, which were directly and proximately caused by Sky's breaches.

**COUNT I**
**BREACH OF CONTRACT**

24.   Axalta incorporates Paragraphs 1 through 27 above.

25.   Axalta and Sky Collision entered into a binding contract when the parties executed the Agreement on August 2, 2016.

26.   Axalta fulfilled its contractual obligations under the Agreement by providing Sky with both the Shop Allowance and the Loaned Equipment.

4

27.    Sky materially breached the Agreement when it then switched to PPG's automotive paint and related product line.

28.    Sky materially breached the Agreement by failing to fulfill the Purchase Commitment.

29.    Axalta has suffered damages, which were directly and proximately caused by Sky's breaches.

30.    Axalta is entitled to Termination Charges totaling $236,119.48, the pro-rated amount of the Shop Allowance. Axalta is further entitled to lost profits, costs, pre-judgment and post-judgment interest, and attorney's fees. *See* Ex. 1 at 10.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Axalta Coating Systems, LLC, respectfully requests that this Court enter judgment in its favor and award damages for Sky's breach of the Agreement, costs, lost profits, pre-judgment and post-judgment interest, prevailing party attorney's fees and all other relief this Court deems proper.

## JURY DEMAND

Axalta demands a trial by jury on all issues so triable.

Respectfully Submitted,

HUNTON & WILLIAMS LLP

Thomas R. Waskom (Pa. Bar No. 321664)
951 East Byrd Street
Riverfront Plaza, East Tower
Richmond, Virginia 23219
twaskom@hunton.com
(804) 788-8403
*Attorneys for Axalta Coating Systems, LLC*

Dated: December 6, 2017

5

# EXHIBIT 1



July 13, 2016

LInda Y. Gray Inc. (d/b/a Sky Collision)
**Attention:**  Linda Gray
1547 S. Broad Street
Monroe, GA   30655-2351

Re:  **Master Incentive Program Agreement**

Dear  Linda Gray,

Thank you for your interest in Axalta! We are pleased to enclose our Master Incentive Program Agreement ("Agreement"). Once the Agreement is signed by each of us, we expect to be able to quickly provide you and/or your affiliates with business incentives, in exchange for certain commitments, as mutually agreed upon by us from time to time.

We believe that the enclosed Agreement better reflects the long-term partnership that we desire with customers like you. Namely, as your business grows and expands over time, we may desire to offer new incentives to support that growth. Those new incentives, and the applicable commitments, could be easily documented on a short Incentive Agreement referencing the Agreement, with no (or minimal) additional terms and conditions. This should shorten the time it takes for each of our respective companies to review and approve each new incentive transaction, and result in your (or your affiliate's) receipt of the incentive(s) more quickly.

Kindly sign the Agreement where indicated and return one (1) original to me via email and regular mail using the following contact information:

Kevin Lewis
kevin.w.lewis@axaltacs.com

ADDRESS:

_____

_____

_____

We look forward to a long and mutually rewarding relationship.

Sincerely,
Kevin Lewis

{Contract ID (00051507)}



## MASTER INCENTIVE PROGRAM AGREEMENT

**THIS MASTER INCENTIVE PROGRAM AGREEMENT** ("Master Agreement") is between LInda Y. Gray Inc. (d/b/a Sky Collision), with its principal place of business at 1547 S. Broad Street, Monroe, GA 30655-2351, on behalf of itself and its affiliates and subsidiaries (each a "Customer" and collectively, "Customers"), and Axalta Coating Systems, LLC, a Delaware limited liability company, having its principal place of business at 50 Applied Bank Blvd., Suite 300, Glen Mills, PA 19342 ("Axalta"). Customer and Axalta agree as follows:

**1. Term.** The term of this Master Agreement begins on the Effective Date and continues for so long as any Incentive Agreement (defined below) duly executed by a Customer and Axalta remains in effect ("Term"). Any expiration or earlier termination of this Master Agreement shall not, however, be deemed to terminate, alter or otherwise modify the term of any Incentive Agreement, which shall remain in effect in accordance with its own terms.

**2. Incentives.** From time to time during the Term, and in exchange for the Customer's commitment(s) (each, a "Customer Commitment") set forth in those written agreements between a Customer and Axalta in substantially the form of Schedule 1 to this Master Agreement, or in such other written agreement as the parties mutually agree on at the time (each, an "Incentive Agreement"), Axalta agrees to provide Customers with the incentive(s) more fully described in the applicable Incentive Agreements (each, an "Incentive"). Each Incentive Agreement shall incorporate the terms of this Master Agreement by reference, but shall be a separate and distinct contract when duly executed by the parties. Every Customer that signs this Master Agreement and/or any Incentive Agreement agrees that their liability is joint and several under this Master Agreement and every Incentive Agreement. Further, if a Customer has signed this Master Agreement or any Incentive Agreement on behalf of any other Customer, such signing Customer shall remain liable for all obligations hereunder and under the applicable Incentive Agreements.

**3. User Protection.** The automotive paint and related products that Axalta manufactures, distributes and/or sells ("Products") are intended solely for use by professionals in the business of manufacturing, finishing, refinishing or refurbishing automotive, truck, train, bus, recreational vehicle, or other vehicles, or by other commercial or manufacturing entities that produce products similar to the Products in the regular course of business, who can handle, use and dispose of the Products safely and in accordance with all laws. Customer may acquire Products pursuant to a separate purchase agreement made by and between Customer and Axalta and/or an Axalta authorized distributor ("Distributor"). Customer agrees to forward any acquired Axalta labeling and literature concerning the Products and their properties to, and ensure compliance by, its employees, contractors and customers who may distribute, handle, process, sell or use such Products. Customer agrees that it will not knowingly resell, or give samples of, any Product to persons using or proposing to use the Products for purposes contrary to recommendations given by Axalta or prohibited by law.





**4. Representations and Warranties.**   Customer represents, warrants and covenants to Axalta, upon the execution of this Master Agreement and upon the execution of each Incentive Agreement, that: (a) the execution, delivery and performance by Customer of this Master Agreement and each Incentive Agreement are within its company powers; constitute valid and binding agreements of Customer enforceable in accordance with their terms; have been duly authorized by all necessary company action; require no action, notice or consent by or in respect of or filing with, any governmental body or authority, agency or official; do not contravene, conflict with or constitute a default under. any provision of applicable law or regulation or of the certificate of formation or operating Incentive Agreement (or similar charter documents) of Customer or any of its affiliates or of any Incentive agreement, judgment, injunction, order or other instrument or obligation binding upon Customer or any of its affiliates; and (b) there is no action, suit or proceeding pending, or threatened, against or affecting Customer or any of its affiliates or any of their locations or assets before any court, mediator or arbitrator of any governmental body, agency or official that in any manner draws into question the validity of, or could materially impair the ability of Customer to, enter into, execute, deliver or perform its obligations under the Master or any Incentive Agreement, or could have or cause a material adverse effect on Customer or its operations.

**5. Termination and Suspension.**

a.   If Customer breaches any term of this Master Agreement or any Incentive Agreement (including, but not limited to, using automotive paint and related materials other than Products or ceasing to use the Products during the Term for any reason), and such breach is not remedied within thirty (30) days after written notice of such breach is received by Customer, or if Customer becomes insolvent, dissolves or assigns its assets for the benefit of its creditors, or files or has filed against it any bankruptcy or reorganization proceeding, then Axalta may terminate this Master Agreement and any Incentive Agreement, each in whole or in part.

b.   In the event of any early termination of an Incentive Agreement, Customer shall (i) immediately pay Axalta any early Termination Charges set forth in such Incentive Agreement to partially offset Axalta's losses as a result of such breach, and (ii) take all other termination actions set forth in the applicable Incentive Agreement and as otherwise reasonably requested by Axalta.

c.   In addition to Axalta's right to terminate the Master Agreement or any Incentive Agreement as set forth above, if Customer breaches any term of the Master Agreement or any Incentive Agreement, then Axalta shall immediately be relieved of its obligation to provide any of the benefits to Customer provided in, and shall have the right to immediately suspend performance under, this Master Agreement and/or the Incentive Agreement, with written notice to Customer.

**6. Indemnity.**   Customer agrees to defend, indemnify and hold harmless Axalta, its affiliates and its and their respective officers, directors, shareholders, employees, agents and representatives from and against all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs (including reasonable attorneys' fees and costs actually incurred), expenses or disbursements of any kind or nature whatsoever, whether direct, indirect, consequential or incidental, with respect to or in connection with or arising out of any (i) misrepresentation or breach of any representations, warranties, covenants or agreements under the Master Agreement or any Incentive Agreement of the Customer, or (ii) Customer's performance of or failure to perform any of its obligations under the Master Agreement or any Incentive Agreement.





**7. Audit.** Axalta shall have the right to survey and audit Customer and each of Customer's locations identified in an Incentive Agreement ("Locations") during regular working hours, upon two (2) business days' advance notice, to confirm compliance under the Master Agreement or any Incentive Agreement or Security Agreement, if applicable. Customer shall assist Axalta as reasonably requested, and provide Axalta with any requested documentation relating to the Products purchased and used by Customer at the Locations and supporting all payments made by or to Customer with respect to the Products.

**8. Disclaimers and Limitations of Liability.**

CUSTOMER UNDERSTANDS AND EXPRESSLY AGREES THAT THE PRODUCTS AND ANY SERVICES, DATA, SUPPORT OR RECOMMENDATIONS PROVIDED BY AXALTA TO CUSTOMER PURSUANT TO ANY INCENTIVE AGREEMENT ARE PROVIDED "AS IS" AND ARE CONSULTATIVE ONLY, AND AGREES THAT IT WILL MAKE ITS OWN INDEPENDENT DETERMINATION ABOUT THE SERVICES, DATA, SUPPORT AND RECOMMENDATIONS OFFERED. CUSTOMER FURTHER UNDERSTANDS THAT IT MAY ACCEPT, MODIFY, CHANGE, AND REJECT ANY SERVICES, DATA, SUPPORT AND RECOMMENDATIONS PROVIDED BY AXALTA. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH HEREIN OR IN ANY WRITTEN AXALTA WARRANTY AGREEMENT SIGNED BY AXALTA AND CUSTOMER, AXALTA MAKES NO REPRESENTATIONS OR WARRANTIES, EITHER EXPRESS OR IMPLIED, WITH RESPECT TO ANY OF THE PRODUCTS, SERVICES, EQUIPMENT OR GOODS PROVIDED BY IT, INCLUDING, WITHOUT LIMITATION, THAT THE SERVICES, DATA, SUPPORT AND RECOMMENDATIONS GIVEN TO CUSTOMER WILL INCREASE SHOP PRODUCTIVITY, FINANCIAL PERFORMANCE, EFFICIENCY, OR PROFITABILITY OF CUSTOMER OR ANY OF THE LOCATIONS, AND/OR ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER AGREES THAT, WITH RESPECT TO ANY PRODUCTS NOT PURCHASED FROM AXALTA, IT HAS NOT RECEIVED ANY REPRESENTATIONS OR WARRANTIES FROM AXALTA. IN NO EVENT SHALL ANY PRODUCT REPRESENTATIONS OR WARRANTIES RECEIVED BY CUSTOMER FROM THE DISTRIBUTOR OR ANY OTHER THIRD PARTY CREATE ANY MORE EXTENSIVE WARRANTY OBLIGATIONS FROM AXALTA TO CUSTOMER THAN THE PRODUCT WARRANTIES THAT AXALTA HAS GIVEN DIRECTLY TO THE DISTRIBUTOR AND/OR CUSTOMER.

NOTWITHSTANDING ANY OTHER PROVISION OF THE MASTER AGREEMENT OR ANY INCENTIVE AGREEMENT TO THE CONTRARY, IN NO EVENT SHALL AXALTA BE LIABLE TO CUSTOMER (i) FOR ANY PUNITIVE, EXEMPLARY OR OTHER SPECIAL DAMAGES ARISING UNDER OR RELATING TO THE MASTER AGREEMENT OR ANY INCENTIVE AGREEMENT OR THE SUBJECT MATTER HEREOF OR (ii) FOR ANY INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES (INCLUDING, WITHOUT LIMITATION, LOSS OF USE, INCOME, PROFITS OR ANTICIPATED PROFITS, BUSINESS OR BUSINESS OPPORTUNITY, SAVINGS OR BUSINESS REPUTATION) ARISING UNDER OR RELATING TO THE MASTER AGREEMENT OR ANY INCENTIVE AGREEMENT OR THE SUBJECT MATTER HEREOF. REGARDLESS OF WHETHER SUCH DAMAGES ARE BASED IN CONTRACT, BREACH OF WARRANTY, TORT, NEGLIGENCE OR ANY OTHER THEORY, REGARDLESS OF WHETHER SUCH PARTY HAS BEEN ADVISED OF, KNEW OF, OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES. THIS SECTION SHALL SURVIVE ANY TERMINATION OR EXPIRATION OF THE INCENTIVE AGREEMENT FOR ANY REASON.





**9. <u>Assignment; Change of Control</u>.** The Master Agreement and each Incentive Agreement binds the parties, as well as their legal representatives, permitted successors and permitted assigns. Customer shall not assign, subcontract or otherwise delegate any of its rights or obligations under this Master Agreement or any Incentive Agreement without the prior written consent of Axalta. Further, Customer shall not permit or enter into any transaction that would constitute a change of control of it or of any of its Locations without Axalta's prior written consent, which shall not be unreasonably withheld. Permitted assignees and/or successors of Customer shall assume all responsibility for all obligations and duties of Customer under the Master Agreement or Incentive Agreement. Any assignment without Axalta's consent shall be void. Axalta may assign this Master Agreement and any Incentive Agreement without prior written consent of Customer, in whole or in part, to any third party.

**10. <u>Confidentiality</u>.**  Customer shall maintain in confidence any confidential information disclosed by Axalta to Customer, including, without limitation, any trade secrets, proprietary information, and the terms and conditions of the Master Agreement or Incentive Agreement, and the Incentives (collectively, "<u>Confidential Information</u>"), and shall treat such Confidential Information as if it were Customer's own confidential information. In addition, Customer shall neither provide the Confidential Information disclosed hereunder to any third party nor use such Confidential Information for any purpose other than to conduct business as contemplated hereunder. This section shall survive any expiration or termination of the Master Agreement or any Incentive Agreement.

**11. <u>Use Of Trademarks</u>.**  Nothing in the Master Agreement or any Incentive Agreement shall be construed to grant Customer any rights or license to any of Axalta's patents, trademarks, trade names, trade dress, certification marks or any other proprietary rights.

**12. <u>Notices</u>.**  All notices required to be sent hereunder shall be in writing, and shall be given (a) by delivery in person, (b) by an internationally recognized next-day courier service or (c) by registered or certified mail (return receipt requested, postage prepaid) and shall be deemed to have been given upon receipt by the party to which notice is given or two (2) days after the day of mailing, whichever is sooner, to the addresses and to the attention of the persons set forth on the signature page below, or to such other address or individual as the parties may specify from time to time by written notice to the other party.

| If to Axalta : | President – North America<br>Axalta Coating Systems<br>50 Applied Bank Blvd., Suite 300<br>Glen Mills, PA 19342 |
|---|---|
| With a copy to : | General Counsel – North America<br>Axalta Coating Systems<br>50 Applied Bank Blvd., Suite 300<br>Glen Mills, PA 19342 |
| If to Customer : | LInda Y. Gray Inc. (d/b/a Sky Collision)<br>1547 S. Broad Street<br>Monroe, GA 30655-2351<br>Attention: President |

**13. <u>Reimbursement Obligations</u>.**  In addition to any other relief it may be awarded or entitled to, Axalta shall be entitled to any attorneys' fees, court costs, interest and other costs reasonably incurred by Axalta in any dispute, controversy or claim arising out of or relating to the Master Agreement or any Incentive Agreement or litigation or other action to enforce the Master



Agreement or any Incentive Agreement. This right to collect such fees and expenses shall survive any expiration or termination of the Master Agreement and/or any Incentive Agreement.

14. **Miscellaneous.**   The Master Agreement and each Incentive Agreement shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania without regard to its conflict of laws rules that would require the application of the laws of any other jurisdiction. Each party consents and submits to the exclusive jurisdiction of, and service of process by, the United States District Court for the Eastern District of Pennsylvania and the state courts of Pennsylvania. Each party further agrees to accept service of summons, complaint or other initial pleading in any manner provided for the giving of notices in Section 12, provided that nothing in this Section 14 shall affect the right of any party to serve such summons, complaint or other initial pleading in any other manner permitted by law. Termination or expiration of the Master Agreement or any Incentive Agreement does not release a party from obligations that, either expressly or by their nature, survive the termination or expiration. Customer's relationship with Axalta is that of an independent contractor. If any part of the Master Agreement or any Incentive Agreement is found to be invalid or unenforceable for any reason, the rest of the Master Agreement or any Incentive Agreement, as applicable, will remain valid and enforceable. Axalta's rights and remedies in this Master Agreement and the Incentive Agreements are cumulative and not exclusive of any other right or remedy that might be available at law or in equity. If either party fails to require the other party to perform any term of the Master Agreement or any Incentive Agreement, such failure will not prevent the party from enforcing such term later. If either party waives the other party's breach of any term of the Master Agreement or any Incentive Agreement, such waiver will not be deemed a waiver of a later breach of such term. The Master Agreement and the Incentive Agreements do not and are not intended to confer any rights or remedies upon any person other than the parties. Amendments to the Master Agreement or any Incentive Agreement shall be in writing and signed by both parties. This Master Agreement, together with the attachments hereto, and any confidentiality or nondisclosure agreements pertaining to the subject matter hereof or thereof, sets forth the entire understanding between the parties and supersede any previous or contemporaneous understandings, commitments, representations, warranties or agreements, written or oral, regarding the subject matter hereof. No course of dealing, usage of trade or course of performance shall be used to supplement or explain any term, condition or instruction in the Master Agreement or any Incentive Agreement, nor be deemed to amend the Master Agreement or any Incentive Agreement. Except as otherwise provided herein, if there is a conflict between or among the provisions of this Master Agreement and any Incentive Agreement, the provisions of this Master Agreement shall control, unless the Incentive Agreement expressly provides that such conflicting term or condition supersedes this Master Agreement. Such additional or different terms or conditions are applicable only to the Incentive Agreement in which they are contained. This Master Agreement and each Incentive Agreement may be executed in counterparts with the same force and effect as if executed in complete documents. Each party agrees that the electronic signatures, whether digital or encrypted, of the parties included in this Master Agreement are intended to authenticate this writing and to have the same force and effect as manual signatures. Electronic signature means any electronic sound, symbol or process attached to or logically associated with a document and executed and adopted by a party with the intent to sign such document.



**IN WITNESS WHEREOF**, the parties have caused this Master Agreement to be duly executed by their authorized officers effective as of the last date of execution below (the "Effective Date").

**LInda Y. Gray Inc.**
**(d/b/a Sky Collision)**

By: _____

Name: Linda Gray

Title:  President

Date:  7-1-2016

{Contract ID (00051507)}

**Axalta Coating Systems, LLC**

By: _____

Name: Erin Tallant

Title:   Regional Manager

Date:  8/2/16



SCHEDULE 1 TO MASTER INCENTIVE PROGRAM AGREEMENT

**FORM OF INCENTIVE AGREEMENT**

**SEE ATTACHED.**



## INCENTIVE AGREEMENT

**THIS INCENTIVE AGREEMENT** ("Incentive Agreement") is made pursuant to the Master Incentive Program Agreement ("Master Agreement"), by and between LInda Y. Gray Inc. (d/b/a Sky Collision), with its principal place of business at 1547 S. Broad Street, Monroe, GA 30655-2351, on behalf of itself and its affiliates and subsidiaries, if any, identified on Exhibit A (each, a "Customer" and collectively, "Customers"), and Axalta Coating Systems, LLC, a Delaware limited liability company, having its principal place of business at 50 Applied Bank Blvd., Suite 300, Glen Mills, PA 19342 ("Axalta"). Each Customer shall be jointly and severally liable for all obligations hereunder. All terms and conditions of the Master Agreement are incorporated into this Incentive Agreement and made a part hereof. Customer and Axalta hereby agree as follows:

**1. Term.**   This Incentive Agreement shall begin on the Effective Date and continue until the Purchase Commitment (defined below) is met ("Term").

**2. Incentives.**  Axalta shall provide the following Incentives during the Term, in exchange for the Customer Commitments set forth in Section 3 hereof:

• **Loaned Equipment.**   Axalta will loan Customer the paint equipment set forth on Exhibit B ("Loaned Equipment"). Customer agrees that all Loaned Equipment will be installed and used only at the Customer's Locations set forth on Exhibit A and shall not be moved from those Locations during the Term of this Incentive Agreement without Axalta's prior written consent. The Loaned Equipment shall at all times remain the property of Axalta and shall be returned by Customer immediately upon demand which may be made at any time in Axalta's sole discretion. Customer will execute any and all appropriate documents and forms required to protect Axalta's interest with regard to the Loaned Equipment as requested by Axalta. Customer shall bear all risk of loss for the Loaned Equipment and damage thereto, normal wear and tear excepted and Customer will insure all Loaned Equipment from fire, theft or other damage to the full replacement value hereof. Customer shall also bear all support costs associated with using ColorNet® computerized color retrieval system.

• **Shop Allowance.**   Axalta agrees to provide to Customer's account a credit in the amount of  $250,000.00 through the Distributor ("Shop Allowance"). The Shop Allowance may also be disbursed to Customer on Axalta's behalf by Distributor in another form to be agreed upon by Axalta, Customer and Distributor. The Shop Allowance shall be used by Customer solely for shop improvements and such improvements must be approved in advance by Axalta. Prior to Axalta issuing the Shop Allowance to Customer, Customer must present to Axalta proof that the shop improvements were completed and that the invoices for such improvements have been paid. Customer agrees that any equipment purchased with the Shop Allowance funds will be installed and used solely at the Customer's locations referenced in Section 4 hereof.




3. **Customer Commitments.**   Upon the Effective Date of this Incentive Agreement, Customer commits to immediately convert to the use of and purchase Axalta Products for 100% of its requirements for automotive paint and related materials to paint and/or finish the vehicles or other items it manufactures, builds, paints, refinishes and/or sells at all of its Locations (defined below) , and further agrees that such purchases of Axalta Products, at actual purchase price less any discount, rebates or credits, if any, are applied, shall equal or exceed  $1,360,000.00 (" Purchase Commitment") ; provided, however, that if a Location requires a conversion of paint equipment in order to use Axalta Products, such Location shall have thirty (30) days from the Effective Date and/or the date such Location becomes owned, controlled, developed, managed, opened or acquired by Customer to comply with the Purchase Commitment. Customer will purchase all Axalta Products through an authorized Axalta Distributor. All sales of Axalta Products through a Distributor shall be subject to such Distributor's standard terms and conditions, including payment terms. All invoices shall be paid when due. Invoices not paid when due will be subject to a late payment service charge as specified on the invoice. Customer agrees to pay all valid late payment service charges invoiced upon receipt.

4. **Locations.** "Locations" shall mean any retail and/or collision shop, including shops used for automobile sales, repairs, training centers and other related facilities that Customer owns, controls, develops, manages, opens or acquires in the continental United States, including the locations listed on Exhibit A (attached hereto). For administrative purposes, the Parties shall endeavor to update Exhibit A to add any new Locations owned, controlled, developed, managed, opened or acquired by Customer after the Effective Date, from time to time, but new Locations shall be Locations regardless of whether Exhibit A is updated.

5. **Early Termination Charges.**   Should Axalta terminate this Incentive Agreement pursuant to Section 5(a) of the Master Agreement or Customer fails to satisfy the Purchase Commitment upon the expiration of the Term, Customer shall immediately pay Axalta, to partially compensate Axalta for its losses, the following early termination charges ("Termination Charges"):

> **Step 1:** Divide the sum of Customer's actual Product purchases at the time of the breach by its Purchase Commitment as of the Effective Date, which is $1,360,000.00, to determine the percentage purchased against its Purchase Commitment ("Percentage Purchased"); then
>
> **Step 2:** Subtract the Percentage Purchased from 100% to determine the percentage of Termination Charges ("Termination Charges Percent"); then
>
> **Step 3:** Multiply the  $250,000.00 (Shop Allowance) by the Termination Charges Percent to arrive at the final Termination Charges amount payable to Axalta; and

- USD 34,850.04 representing the agreed upon value of the Loaned Equipment, or, at Axalta's option, return the Loaned Equipment to Axalta in good working order.

These Termination Charges are in addition to attorney's fees, court costs, interest and other costs reasonably incurred by Axalta in any dispute, controversy or claim arising out of or relating to the Incentive Agreement or litigation or other action to enforce the Incentive Agreement. Such payment of Termination Charges by Customer shall be in addition to any other remedies available to Axalta at law or in equity, including, but not limited to, lost profits.





**6.** Unless otherwise defined herein, capitalized terms shall have the meaning given to them in the Master Agreement.

IN WITNESS WHEREOF, the parties have executed this Incentive Agreement to the above mentioned Master Agreement as of the last date of execution below (the "Effective Date").

**LInda Y. Gray Inc.**
**(d/b/a Sky Collision)**


By: _____
Name: Linda Gray
Title:  President
Date: 7 - 1 - 2016

**Axalta Coating Systems, LLC**


By: _____
Name: Erin Tallant
Title:  Regional Manager
Date: 8/2/16

{Contract ID (00051507)}

# EXHIBIT A

**LOCATION(S):**

LInda Y. Gray Inc. (d/b/a Sky Collision)
1547 S. Broad Street
Monroe, GA 30655-2351

Sky Collision II - Loganville
3880 Hwy 81
Loganville, GA  30052

Sky Collision Cumming
5855 Steeplechase Blvd
Cumming, GA  30040

# EXHIBIT B

**Shop Location:**

LInda Y. Gray Inc. (d/b/a Sky Collision)
1547 S. Broad Street
Monroe, GA 30655-2351

**Distributor Location:**

Keystone Automotive - Atlanta
1700 Westgate Parkway
Atlanta, GA 30336

## LOANED EQUIPMENT

| Code | Description | Unit | Qty |
|------|-------------|------|-----|
| Kit SH 15 | Spies Hecker 480 HiTec Mixing Colors/Additives | | 1 |
| 49008200 | 49008200 EAXX SPIES HECKR ACCESSORY DECK | EA | 3 |
| 49009010 EA | 49009010 EAXX SH HI TEC TINT CHART - ENG | EA | 3 |
| 49009020 | 49009020 EAXX SH HI-TEC MIX MACH MAGNETS | EA | 3 |
| 49009025 | 49009025 SH 13-15 COLOR CHIP BOOK | EA | 3 |
| 49009030 | 49009030 EAXX SH HI TEC TINT DECK | EA | 3 |
| 49009060 | 49009060 EAXX PERMHYD HITEC TRI STAGE DK | EA | 3 |
| 49009070 | 49009070 EAXX SH HITEC FAN DK MFG/CFAM | EA | 3 |
| 49009910 | 49009910 EAXX 12-14 SH DOM & IMP COLR BK | EA | 3 |
| 49009920 | 49009920 EAXX WHEEL DECK - SPIES HECKER | EA | 3 |
| 49009930 EA | 49009930 EAXX 14-16 COLOR CHIP BOOK SH | EA | 3 |
| 49905240 | 49905240 EAXX SH HI-TEC UPDATE 1 - 14 | EA | 3 |
| 49905293 EA | 49905293 EAXX SHHITEC TRICOAT UPDTE 1-15 | EA | 3 |
| 49905300 | 49905300 EAXX SH HI-TEC UPDATE 2-14 | EA | 3 |
| 49905286 | 49905286 EA SPIS HECKR HI-TEC UPDAT 1-15 | ea | 3 |
| 49905289 | 49905289 EAXX SH HI-TEC UPDATE 2-15 | EA | 3 |
| E-1006 | E-1006 EAXX 2 LTR MIXING JUG | EA | 3 |
| E-1009 | E-1009 EAXX POUR SPOUTS-1 LTR | EA | 15 |
| E-4883 EA | E-4883 BX100 MIX CUP 32OZ-SPIES HECKER | EA | 3 |
| E-4885 EA | E-4885 BX25 MIX CUP LID 32OZ | EA | 3 |
| E-4893 EA | E-4893 EAXX FILLON QM S35 MIX LID Q/1L | EA | 234 |
| E-5270 EA | E-5270 EAXX FILLON S35-X5 MIX LID G/3.5L | EA | 36 |
| E-5432 EA | E-5432 EAXX DEDOES AIR NOZZLE BLOWER | EA | 3 |
| L-3110 | L-3110 EAXX SPIES HECKER WELCOME KIT | EA | 3 |
| L-0009 | L-0009 EAXX WET SANDING BUCKET | EA | 3 |
| L-3080 EA | L-3080 EAXX SPIES HECKER TDS BOOK | EA | 3 |
| M-5943 EA | M-5943 EAXX SH 1+ MIX STICK | EA | 3 |

| | | | |
|---|---|---|---|
| M-5944 EA | M-5944 EAXX SH 2:1 MIX STICK | EA | 3 |
| M-5945 EA | M-5945 EAXX SH 3:1 MIX STICK | EA | 3 |
| M-5946 EA | M-5946 EAXX SH 4:1 MIX STICK | EA | 3 |
| M-6156 EA | M-6156 EAXX VINDICATOR PADS | EA | 3 |
| M-6301 EA | M-6301 EAXX SH HITEC MIX STICK | EA | 3 |
| M-6573 EA | M-6573 EAXX SH MIX STICK 5:1 | EA | 3 |
| M-6371 EA | M-6371 EAXX METAL FAN DECK CABINET | EA | 3 |

FR:Christopher Wood    To:PMZ-10183/Sarah Arevalo

RECEIVED  01/23/2015 12:32AM

09:32 01/28/16 E1 Pg  3-6

RECEIVED  08/01/2016 10:36AM 6784757599    SKY COLLISION

## Form W-9
(Rev. August 2013)
Department of the Treasury
Internal Revenue Service

### Request for Taxpayer
### Identification Number and Certification

**Give Form to the requester. Do not send to the IRS.**

Name (as shown on your income tax return)
Linda Y Gray Inc DBA Sky Collision

Business name/disregarded entity name, if different from above

Check appropriate box for federal tax classification:
- [ ] Individual/sole proprietor
- [ ] C Corporation
- [✓] S Corporation
- [ ] Partnership
- [ ] Trust/estate

- [ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

- [ ] Other (see instructions) ▶

Exemptions (see instructions):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

Address (number, street, and apt. or suite no.)
3374 Langley Road

Requester's name and address (optional)

City, state, and ZIP code
Loganville  GA  30052

List account number(s) here (optional)

### Part I   Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on the "Name" line to avoid backup withholding. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN* on page 3.

**Note.** If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.

Social security number: ___ - __ - ____

Employer identification number: 2 0 - 8 5 6 2 1 1 4

### Part II   Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. citizen or other U.S. person (defined below), and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

**Sign Here**   Signature of U.S. person ▶                Date ▶  6-14-16

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** The IRS has created a page on IRS.gov for information about Form W-9, at *www.irs.gov/w9*. Information about any future developments affecting Form W-9 (such as legislation enacted after we release it) will be posted on that page.

## Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, payments made to you in settlement of payment card and third party network transactions, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the

withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct.

**Note.** If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

- An individual who is a U.S. citizen or U.S. resident alien,

- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,

- An estate (other than a foreign estate), or

- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

Cat. No. 10231X                Form **W-9** (Rev. 8-2013)



